**UNITED STATES of America**

v.

**Steven Paul ROMBOM, Defendant.**

**No. 76 Cr. 719–LFM.**

United States District Court,
S. D. New York.

Oct. 22, 1976.

Robert S. Persky, Jersey City, N. J., for Steven Rombom.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for U. S. (Joseph Jaffe and Robert B. Mazur, Asst. U. S. Attys., New York City, of counsel).

## OPINION

MacMAHON, District Judge.

Steven Paul Rombom, charged as a juvenile delinquent, moves for an order declaring Section 5032 of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 et seq. (1974), unconstitutional on its face and as applied on the ground that that section places an impermissible burden on his Fifth Amendment right to plead not guilty and his Sixth Amendment right to a trial by jury.

The pertinent portion of § 5032 provides:

"A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice."

Rombom relies on *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), where the Supreme Court held that the death penalty provision of the Federal Kidnaping Act violated the Fifth and Sixth Amendments because the death penalty could be imposed only after a jury verdict of guilty, upon the jury's recommendation that it be imposed. The Court held that because a defendant could avoid exposure to the death penalty only by pleading guilty or waiving a jury trial, the provision needlessly encouraged such pleas or waivers

and placed an impermissible burden on the assertion of constitutional rights. 390 U.S. at 583, 88 S.Ct. 1209.

Rombom now contends that § 5032 similarly discourages assertion of his constitutional rights because he is coerced into pleading guilty to the juvenile charges in order to avoid exposure to the potentially greater penalties if the government is successful on its motion to transfer and he is ultimately convicted of the adult offenses. We disagree and deny the motion.

### FACTS

The government filed an information on August 5, 1976, charging Rombom with fourteen acts of juvenile delinquency, including unlawful possession and interstate transportation of firearms and explosives, and assaulting foreign officials and official guests of the United States. Eleven of the acts charged would be felonies punishable by ten years imprisonment, or more, if committed by an adult. The government was, therefore, entitled to move to transfer him to adult status. See 18 U.S.C. § 5032, *supra.*

Rombom pleaded not guilty to the information on August 6, 1976, and immediately thereafter the government moved to transfer him to adult status. On August 30, 1976, at the commencement of the hearing on the motion, counsel for Rombom made this motion to declare the statute unconstitutional. Counsel represented at that time that Rombom still wished to plead not guilty but contended, nevertheless, that under the *Jackson* rationale the statute was invalid. We reserved decision on the constitutional issue and continued with the hearing.

On September 28, 1976, the last of several days of hearing on the motion, counsel indicated that Rombom wanted to plead guilty to the information. Rombom, however, never personally offered to plead guilty but, in any event, we refused to accept

counsel's offer and, after finding that transfer of Rombom to adult status would be in the interest of justice, granted the government's motion to transfer.

At the time the information was filed, Rombom was approximately 17½ years old. The maximum penalty he could receive as a juvenile would be 3½ years, or until he reaches the age of 21. 18 U.S.C. § 5037(c). If, however, Rombom were tried and convicted as an adult, he would be subject technically, but not realistically, to a maximum term of imprisonment well over a hundred years.[*]

### DISCUSSION

Rombom argues on the one hand that he has a constitutional right to plead guilty to the information, and on the other that the statute which gives him that choice is unconstitutional.

### I.

We note at the outset that a defendant has no *absolute* constitutional right to plead guilty, *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). The instant question, then, is whether a defendant has any such right where, as here, he has been charged in a juvenile information and the government has moved for his transfer to adult status.

The clear intent of the new § 5032 (amended in 1974) is that in order to bring a "criminal prosecution" against a juvenile, the government must first proceed by information and then by motion to transfer (unless the juvenile consents in writing to adult prosecution). The district court must, of course, concur with the government that adult prosecution is appropriate "in the interest of justice." 18 U.S.C. § 5032, *supra.* Prior to the 1974 amendment, the Attorney General, in his *sole* discretion, could proceed against certain juveniles as adults, and that

---

[*] See, however, *United States v. Duvall,* 537 F.2d 15, 25 (2d Cir. 1976), where the court said that although such a maximum total sentence might be "correct as a matter of multiplication be-

cause of the large number of counts, 'it only tells part of the story' . . ." and that such a total sentence is not " 'possible,' in any real sense."

provision was held to be constitutional. *United States v. Quinones,* 516 F.2d 1309 (1st Cir. 1975); *Cox v. United States,* 473 F.2d 334 (4th Cir.), *cert. denied,* 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973). The prior statute also provided for juvenile treatment only if the juvenile consented, and such consent was deemed a waiver of trial by jury. 18 U.S.C. §§ 5032–33.

In *United States v. Torres,* 500 F.2d 944 (2d Cir. 1974), the court rejected the contention that these provisions placed an unconstitutional burden on a juvenile, noting that there is no constitutional right to a jury trial in juvenile proceedings, citing *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). In *McKeiver,* the Supreme Court refused to define state juvenile proceedings as "criminal prosecutions," which would have called into play the Sixth Amendment guarantee of a jury trial in "criminal prosecutions."

The juvenile stage of a proceeding under § 5032 has similarly been defined as noncriminal. As the court said in *United States v. Hill,* 538 F.2d 1072 (4th Cir. 1976):

> "We see nothing in [§ 5032] which would cause us to believe that the proceeding against [the defendant] was essentially criminal rather than an ascertainment of status as a juvenile delinquent." (538 F.2d at 1075.)

The court in *Hill* goes on to discuss the rehabilitative and essentially non-punitive intent of juvenile proceedings.

Congress has provided in § 5032 that juveniles over sixteen charged with serious crimes may be *criminally* prosecuted, but with the interposition of a motion to transfer which must be decided by the district court. The motion must, therefore, be regarded as an intermediate step, designed to ascertain how the juvenile should be treated in the interest of justice. Having provided that certain juveniles could be prosecuted criminally, congress did not intend that such a prosecution, once "begun" by the Attorney General's motion, could be terminated at will by the defendant's offer to plead guilty to the non-criminal juvenile information. The criminal proceeding would, of course, terminate if the district court should find that transfer to adult status is not in the interest of justice, in which case the juvenile proceeding would resume.

Our holding does not create the situation confronting the Court in *United States v. Jackson, supra.* There, the government had argued that the death penalty provision of the Kidnaping Act could be upheld by instructing federal judges not to accept guilty pleas or waivers of jury trials, thus requiring *all* defendants under the Act "to submit to a full-dress jury trial as a matter of course." 390 U.S. at 584, 88 S.Ct. at 1218. In rejecting that approach, the Court said:

> "Quite apart from the cruel impact of such a requirement upon those defendants who would greatly prefer not to contest their guilt, it is clear—as even the Government recognizes—that the automatic rejection of all guilty pleas 'would rob the criminal process of much of its flexibility.'" *Id.*

Our refusal to accept counsel's offer that Rombom plead guilty during the pendency of the government's motion in no way requires him to submit to a "full-dress jury trial" against his will. If the court grants the government's motion, a defendant may then plead guilty or not guilty to the subsequent indictment, and under either plea the possible penalties would be the same. If the court should deny the motion and the juvenile proceeding resumes, Rombom may likewise plead guilty or not guilty, and, again, the possible penalties would be the same. In either event, there would be no "cruel impact" of requiring a jury trial if the defendant does not choose to contest his guilt. Nor does this holding rob the system of any of its "flexibility." Indeed, such an approach must be adopted to give effect to the flexibility in treatment of juveniles which is at the core of this statutory plan.

As we interpret § 5032, therefore, the non-criminal juvenile action is in effect "suspended" while the government's motion to transfer is pending, and a juvenile has no right to plead guilty to the information until the motion has been decided and the

proper proceeding determined. We think, therefore, that the statute cannot be construed as unconstitutional as applied to Rombom because he cannot complain that he has been "coerced" into a guilty plea.

## II.

Even if § 5032 could be interpreted to provide some incentive for a juvenile to plead guilty to the information, the statute still would not be unconstitutional on its face merely because of that incentive. A juvenile, for example, may seriously consider pleading guilty to the information before the government moves to transfer, in order to avoid that motion and resulting exposure to one or more ten-year penalties. Similarly, the government may, in some instances, actually negotiate with a juvenile to plead guilty to the information, representing that, if he does, the government will not move to transfer. A plea of guilty early in the process might be very attractive to a juvenile and might offer him an opportunity substantially to reduce his exposure to a long term of imprisonment. The mere existence, however, of such a beneficial option does not compel a plea of guilty and thereby render the statute unconstitutional.

Decisions subsequent to *Jackson* demonstrate that the Supreme Court has not adopted the broad interpretation that Rombom now urges. See, *e. g., North Carolina v. Alford, supra; Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). As the Court said in *Brady:*

"We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

\*　\*　\*　\*　\*　\*

[W]e cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." 397 U.S. at 751–53, 90 S.Ct. at 1470–1471.

It is significant that in *Brady,* the Court was considering the voluntariness of a plea entered under the same Kidnaping Act dealt with in *Jackson,* and it found that the plea would not necessarily be involuntary even though the death penalty provision was still in effect at the time of the plea.

In *North Carolina v. Alford, supra,* the Court re-emphasized that *Jackson* does not compel a holding that pleas entered to limit maximum penalties are per se invalid:

"The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant . . . . That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." 400 U.S. at 31, 91 S.Ct. at 164 (citations omitted).

See also *United States v. Lewis,* 300 F.Supp. 1171 (E.D.Pa.1969), where the court held that the government's practice of dismissing a more serious charge in return for a guilty plea to a lesser charge did not create an unconstitutional burden of the type condemned in *Jackson.* The court noted that, if the defendant were convicted of either or both of the offenses, the possible penalties would be the same "[r]egardless of the manner in which the defendant exercises his constitutional rights." 300 F.Supp. at 1174. The court also observed that the defendant had no constitutional right to plea-bargain and, therefore, that the coercive effect of such a bargain could not be

considered in determining the constitutionality of the statutes.

■ Similarly, we see nothing in the constitution or any of the cases to suggest that a person under the age of eighteen has a right to juvenile treatment. Indeed, the implication of *McKeiver v. Pennsylvania,* *supra,* is strongly to the contrary. Congress has granted such treatment by statute and has provided for more *lenient* treatment than that to which a defendant would otherwise be entitled under the constitution. The fact that lesser penalties are thus granted statutorily does not place an unconstitutional burden on the defendant's rights to plead not guilty and to demand a jury trial. He is still entitled to those rights if he accepts criminal prosecution voluntarily, or if the government moves for it and the motion is granted by the court.

If a defendant does choose to plead guilty to a juvenile information, for whatever reason, the plea still must be a "voluntary and intelligent choice," *North Carolina v. Alford, supra,* and the court must still satisfy itself that "there is a factual basis for the plea," Rule 11(f), Fed.R.Crim.P.

We hold, therefore, that 18 U.S.C. § 5032 is constitutional on its face and as applied to Rombom. We further hold that a juvenile has no constitutional right to plead guilty to the juvenile charges against him during the pendency of a motion by the government to transfer him to adult status.

Accordingly, Rombom's motion is in all respects denied.

So ordered.