Peter MILLER, Petitioner,

v.

SUPERINTENDENT, OTISVILLE COR-
RECTIONAL FACILITY, Respondent.

No. 79 Civ. 4171 (RWS).

United States District Court,
S. D. New York.

Dec. 3, 1979.

Irving Anolik, New York City, for petitioner.

Robert Abrams, Atty. Gen., State of New York, New York City, for respondent; Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

Petitioner Peter Miller ("Miller"), a prisoner serving a four year to life sentence at the Otisville Correctional Facility, Otisville, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, his petition is denied.

On March 15, 1977, Miller pled guilty in New York State Supreme Court to charges of conspiracy and sale of a controlled substance. Prior to sentencing, Miller moved for the dismissal of the indictment on the ground that he was selectively and vindictively prosecuted in state rather than federal court because he refused to cooperate with federal officials. After a lengthy hearing the Honorable Michael J. Dontzin found that there was no clear showing that the decision to try the case in state court was solely due to prosecutorial vindictiveness. *People v. Carpenito, et al.,* Ind. No. 4480/76 (N.Y.S.Ct. Mar. 27, 1978). This issue was raised on appeal, but the Appellate Division affirmed the conviction without opinion on March 6, 1979, and leave to appeal to the New York Court of Appeals was denied on April 20, 1979.

The following facts found by Justice Dontzin are fairly supported by the record and are therefore adopted by this court as follows.[1] In March 1976, Special Agents of the Federal Drug Enforcement Administration ("DEA"), commenced an investigation which led them to Miller. Miller was arrested by the Special Agents shortly before midnight on November 11, 1976, after he had transferred cocaine to a Special Agent as part of a planned sale. Four hours later, Enrico Carpenito was arrested by the agents for the same drug-related transactions.

Each man was separately interviewed that night by Fred Gormandy, the supervising agent who, along with other Special Agents attempted to persuade the defendants to "cooperate" by admitting their participation in the drug sales, and by helping them "make cases" against other drug dealers. Justice Dontzin found that during these interviews, the differences between the sentencing provisions under the state and federal drug laws were explained to the petitioner. According to Justice Dontzin, "viewed at its worst, such references were specifically made to threaten defendants with punishment of state prosecution if they failed to cooperate; and viewed most favorably, were ill-disguised inferences that the defendants would benefit from federal prosecution if they did cooperate."

Sometime prior to the arrest, the investigation of Miller had been referred to the office of the Special Narcotics Prosecutor of New York City. Justice Dontzin found that there was some commitment on the part of the DEA agents to have the case prosecuted in state court. State indictments were voted against both defendants on November 8, 1976, but were not filed due to the inexperience of the assistant district attorney.

Since there was no state indictment filed on November 12 and no arrest warrants available at that time, neither Carpenito nor Miller could be arraigned in state court. As an accommodation to the DEA agents and the Special Prosecutor,[2] arrangements were made to arraign the defendants in

---

1. A determination after a hearing on a factual issue, made by a state court in a proceeding to which the applicant for the writ and the state were parties, ordinarily shall be presumed correct. 28 U.S.C. § 2254(d). An exception to this general rule arises when a federal court concludes that the factual determination is not fairly supported by the record. § 2254(d)(8).

2. The special agents wanted to avoid the 36–48 hour delay they would face over the long Veterans Day holiday if the defendants were arraigned in State court on a felony complaint. The special prosecutor was in an embarrassing position because of the failure to file the indictment voted on November 8.

860

federal court upon a complaint charging them with violations of 21 U.S.C. § 841(a)(1).

Prior to their arraignment on November 12, the defendants were interviewed separately by Assistant United States Attorney Michael Carey in the presence of Special Agent Michael O'Connor. Efforts were made to persuade the defendants to cooperate with the federal prosecutor and the DEA. Justice Dontzin found it apparent that the matters of mandatory life sentences and tougher state prisons were brought to the defendants' attention with the same purpose and thrust as during the earlier interviews at DEA headquarters.

The defendants were then arraigned before a federal magistrate, and bail was set. Carey did not inform the magistrate that the federal prosecutor had a commitment to transfer the case to the Special Narcotics Prosecutor, nor did Carey inform counsel for defendants of this fact.

During the period between the federal arraignment and his arraignment in state court, Miller was contacted by DEA agents personally and on the telephone. On these occasions, the agents tried to persuade Miller to "cooperate" and again mentioned the differences in consequences between federal and state prosecution, with the inference that Miller might be prosecuted federally if he cooperated.

On November 17, 1976, the assistant district attorney appeared before the New York Special Narcotics Grand Jury and reopened the case. The grand jury heard additional testimony and again voted indictments against Miller and Carpenito, adding a new indictment concerning the November 11 cocaine transaction. Both defendants were arraigned in state court on November 29, 1977. The federal complaints against the defendants were dismissed on November 30.

A. Due Process

The petitioner concedes that he has no constitutional right to be tried under a federal statute rather than a state statute, even when the former imposes a less severe penalty. *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 277, 345 F.2d 964, 967, *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965); *De Maria v. Jones*, 416 F.Supp. 291, 301 (S.D.N.Y.1976). He argues, however, that Justice Dontzin applied an incorrect standard when he found that petitioner was not entitled to a dismissal on due process grounds because his refusal to cooperate was not the "sole" determinative factor in the decision to prosecute him on state charges. He claims that the appropriate inquiry is whether, under all the circumstances, a "realistic likelihood" of prosecutorial vindictiveness is present.

Petitioner relies on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in which the Supreme Court held that due process of law requires that vindictiveness against a defendant for having successfully attacked his conviction must play no part in the sentence he receives after a trial. It reasoned that since fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to attack his conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. *Id.* at 725, 89 S.Ct. 2072.

This holding was extended to prosecutorial vindictiveness in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), in which a defendant who appealed from a misdemeanor verdict and was entitled to a new trial was then charged with a felony arising from the same conduct. The Court noted that the Due Process Clause was offended by possibilities of increased punishment upon retrial after appeal "that pose a realistic likelihood of 'vindictiveness.'" *Id.* at 27, 94 S.Ct. 2098. It found that the opportunities for vindictiveness in the case before it were such that the state would not be allowed to respond to a defendant's right to appeal by bringing a more serious charge against him. *Id.* at 28–29, 94 S.Ct. 2098.

Four years later, the Supreme Court began to limit this trend in *Bordenkircher v. Hayes*, 439 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). It noted that

the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. *See Blackledge v. Perry, supra* 417 U.S. at 26–28, 94 S.Ct. [2098] at 2101–02. 439 U.S. at 363, 98 S.Ct. at 667–668. In *Bordenkircher*, the Court found no due process violation when a state prosecutor carried out a threat made during plea negotiations to have the accused reindicted on more serious charges if he did not plead guilty to the offense with which he was originally charged. The Court reasoned that plea bargaining is an important component of the criminal justice system, and that there is no element of punishment in the "give and take" of plea bargaining as long as the accused is free to accept or reject the prosecutor's offer. *Id* at 362–63, 98 S.Ct. 663.

■ In the instant case, there is no claim that the state is retaliating against the accused for lawfully attacking his conviction. *See, e. g., Blackledge v. Perry, supra; North Carolina v. Pearce, supra.* In fact, Justice Dontzin found that the totality of the evidence "tilts this case toward a finding that the decision to refer this case to the State for prosecution was made before the [petitioner] was arrested," and this court cannot say that the finding is not fairly supported by the record. 28 U.S.C. § 2254(d)(8). Moreover, the government's attempt to induce "cooperation" more closely resembles the activity sanctioned in *Bordenkircher v. Hayes, supra,* than that found in *Perry* or *Pearce*, particularly because Miller was free to accept or reject the government's offer and the attempt to obtain "cooperation," like plea bargaining, involves a "the mutuality of advantage" for defendants and prosecutors. *Bordenkircher v. Hayes, supra* at 363, 98 S.Ct. 663.

■ The Supreme Court has explicitly recognized that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid," *Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978). A review of the facts of the case at bar, as found by the state court, reveals that the pressure brought to bear on Miller did not deprive him of due process of law.

### B. Equal Protection

■ Petitioner also seems to claim that the transfer of his case from federal to state court deprived him of equal protection of the laws. It is well-settled that " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher v. Hayes,* 434 U.S. at 364, 98 S.Ct. at 668, *quoting, Oyler v. Boles,* 368 U.S. 444, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

■ To support a claim of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing (1) that while others similarly situated have not generally been prosecuted because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been based upon such impermissible considerations as race, religion or the desire to prevent his exercise of constitutional rights. *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974); *United States v. Maliza,* 437 F.Supp. 952, 953 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1298 (2d Cir. 1978). In light of Justice Dontzin's finding that the decision to prosecute Miller in state court was made before his arrest, Miller has failed to satisfy his heavy burden. Moreover, petitioner can hardly claim that others who have engaged in conduct similar to petitioner's have not also been prosecuted under state laws.

Consequently, Miller's petition is denied in all respects and shall be dismissed by the clerk of the court.