UNITED STATES of America,
Plaintiff–Appellee,

v.

Manuel VASQUEZ and Luis Ibarguan,
Defendants–Appellants.

Nos. 264, 439, Dockets 80–1242, 80–1254.

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1980.

Decided Oct. 27, 1980.

John Latella, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff–appellee.

Edward S. Panzer, New York City, for defendant–appellant Vasquez.

Paul E. Warburgh, Jr., New York City (Axelrod & Warburgh, Charles F. Axelrod, New York City, of counsel), for defendant–appellant Ibarguan.

Before MULLIGAN and TIMBERS, Circuit Judges and PALMIERI *, District Judge.

MULLIGAN, Circuit Judge:

Appellants Manuel Vasquez and Luis Ibarguan appeal from judgments of conviction entered on guilty pleas in the United States District Court for the Eastern District of New York by Chief Judge Jack B. Weinstein, for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1976). In addition, appellant Ibarguan was convicted, on a plea of guilty, of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1976). On appeal, appellants assert that Judge Weinstein erred by refusing to grant, in their entirety, motions to suppress evidence and, therefore, that the convictions should be reversed. The judgments of conviction are hereby affirmed.

### I.–The Facts

Acting on information disclosed in a related narcotics investigation, Drug Enforcement Agency (DEA) detectives conducted surveillance of an apartment building at 14–01 55th Street, Brooklyn, New York, believed to be the residence of a large cocaine purchaser named Ocampo. Another investigation had revealed that Ocampo re-sided in apartment A–1, although he had not yet been identified there. On one occasion of surveillance, the agents observed a woman who lived in the same apartment leave the building several times and look up and down the street as if she were expecting someone. Soon thereafter, the appellants approached the building in a car that the agents recognized as belonging to another individual identified in the records of a related narcotics investigation.[1] Appellant Vasquez left the car and entered the apartment building. A few minutes later, Vasquez returned and the appellants drove about ten blocks to another apartment building. After leaving the vehicle, Vasquez signaled Ibarguan to drive away. At which point, Ibarguan began circling the block and several times engaged in peculiar conduct, apparently suspecting that he was being watched or followed. During this period, DEA Detective Raymond Vallely attempted to conduct a surveillance of the appellants on foot. He observed Vasquez leave the building, note the presence of Vallely and then return into the building. Shortly thereafter, Vasquez re–emerged carrying an umbrella and a yellow and white plastic shopping bag. Ibarguan immediately drove to the curb, picked him up and drove away followed directly by the detectives' car. When both cars stopped at an intersection, Ibarguan signaled and positioned his car for a right turn, but as the light changed he glanced in the rear view mirror and abruptly turned left. Sensing that the appellants were aware of being followed and rather than risk losing sight of them in traffic, the agents pulled along the driver's side of the appellants' car at the next light. The agents displayed a badge and pulled the appellants over to the curb. As Vallely left the car, he saw Vasquez bend down and reach under the passenger seat. By the time Vallely got to the pas-

---

* United States District Judge for the Southern District of New York, sitting by designation.

1. Records seized during a search several months prior to the incidents involved here, disclosed the names of several customers of an extensive cocaine distribution organization in Queens and Brooklyn, New York. In addition to Ocampo, DEA agents discovered the name "Corea" and his residence at 104–40 Queens Blvd., Apt. 19D, Forest Hills, New York. It was determined that a 1976, four–door blue Mercury Monarch was parked in the building's parking facility leased to Apartment 19D.

senger side of the car, Vasquez had placed the shopping bag, which had been on his lap, partially under the car. Thereupon, Vallely directed Vasquez and Ibarguan to leave the car, frisked them and picked up the shopping bag. He was able to see, in plain view, a large amount of money at the top of the bag. When Vallely asked who owned the bag, Ibarguan smiled and said something to the effect that it must belong to Detective Vallely since he found it in the street. Vallely then searched through the bag and found, concealed under the cash, several plastic bags containing approximately three pounds of cocaine. Appellants were then placed under arrest and taken to the 66th Police Precinct. Later they were transferred to DEA headquarters for processing.

## II.–The Law

(A) Appellants claim that the agents had no grounds either to make an investigatory stop or to make the subsequent arrest. These contentions have no merit. "An officer need have only a reasonable suspicion that criminal activity is afoot before subjecting a person to an investigatory stop." *United States v. Gomez*, 633 F.2d 999, at 1004 (2d Cir. 1980); *United States v. Vasquez*, 612 F.2d 1338, 1342 (2d Cir. 1979). In light of the information derived from the other drug investigations, the elusive meanderings of appellant Ibarguan while waiting for Vasquez, the appearance of Vasquez with the shopping bag, as well as the attempt to confuse the trailing agents in traffic, the officers had articulable, specific and objective facts to form the basis for a reasonable suspicion that the appellants were engaged in narcotics trafficking. "True, viewed singly by an untrained eye, these events might be susceptible of an innocent interpretation. But when viewed collectively by experienced police officers who have seen this pattern of behavior many times before," the events provided a reasonable objective basis to stop and question the appellants. *United States v. Gomez, supra*, at 1005; *e. g., United States v. Oates*, 560 F.2d 45, 61 (2d Cir. 1977).

Furthermore, when Vasquez bent down and reached under his seat, the detectives were justified in making a protective frisk under *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), particularly in view of the violent nature of narcotics crime. See *United States v. Vasquez, supra*, 612 F.2d at 1343; *United States v. Oates, supra*, 560 F.2d at 61. In addition, after the detectives saw large amounts of money in the shopping bag and heard Ibarguan's suggestion that the bag belonged to Detective Vallely, a remark construed by Judge Weinstein to be an attempt to bribe the officer, probable cause existed to seize the bag and inspect its contents. Upon discovery of white powder, almost certain to be narcotics, probable cause existed for the arrests. As we recently stated in *United States v. Webb*, 623 F.2d 758, 761 (1980), "[w]hile the rule prohibiting law enforcement officers from making arrests without probable cause serves to protect the public from harassment or arbitrary police actions, the rule also must serve the concomitant interest of allowing the police to enforce the law without undue restraint." See *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

Appellants' reliance on *United States v. Rico*, 594 F.2d 320 (2d Cir. 1979) and *United States v. Buenaventura–Ariza*, 615 F.2d 29 (2d Cir. 1980) does not lessen the highly suspicious pattern of behavior engaged in by these appellants. These cases, which dealt with investigatory stops and searches in airports of persons suspected to be drug couriers, employ different modes of analysis because different factual exigencies are at issue.[2] Nevertheless, the factor underlying

2. In the airport cases involving investigatory stops of persons suspected of drug trafficking, the chief factors arousing reasonable suspicion or probable cause include whether the suspects are travelling between a "source city" and a "recipient city" and whether the suspects match a narcotics courier "profile." In *United States v. Buenaventura–Ariza, supra*, for example, the court found that arrival from a source city and generally nervous demeanor did not justify an investigatory stop of the appellants, in the absence of other objective indicia such as

all narcotics cases is the public's "compelling interest in detecting those who would traffic in deadly drugs for personal profit." *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (Powell, J., concurring). We are, therefore, unpersuaded by the purportedly innocent explanations for conduct otherwise indicative to experienced officers that the appellants were involved in narcotics transactions at the time of their arrest.[3]

For these same reasons, we agree with the District Court that the search of the shopping bag was justifiable and proper. Even if the appellants had not abandoned the bag, see *United States v. Arboleda,* 633 F.2d 985, at 991 (2d Cir. 1980), its incriminating contents could be seen in plain view. Furthermore, although the appellants may have had some expectation of privacy initially, this had certainly evanesced after Ibarguan relinquished ownership to Detective Vallely. Therefore, the officer's observing and searching the contents of the paper bag was entirely reasonable under the circumstances. *E. g., Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Dien,* 609 F.2d 1038 (2d Cir. 1979); *United States v. Santana,* 485 F.2d 365 (2d Cir. 1973).

■ (B) The appellants' second major claim is that statements obtained from them at DEA headquarters after their arrest should have been suppressed because they were "tainted" by earlier statements made at the 66th precinct which the District Court suppressed because of the absence of adequate *Miranda* warnings. The test is whether assuming the earlier statements were inadmissible, the latter statements are rendered inadmissible because of any taint carried over from the previous unconstitutional interrogation. *E. g., United States v. Knight,* 395 F.2d 971, 974 (2d Cir. 1968). Judge Weinstein's conclusion that the later admissions were not tainted is not clearly erroneous and is fully supported by the record. Prior to questioning at DEA headquarters, Vasquez, who was Spanish–speaking, was given his constitutional rights in Spanish by a qualified bilingual agent. Since Ibarguan had previously made several statements in English, he was given his rights in English. Both appellants indicated that they understood their rights and voluntarily repeated the statements they made at the 66th precinct prior to receiving the *Miranda* warnings. The later questioning took place in a noncoercive atmosphere: there is no suggestion of physical or mental intimidation and the questioning was conducted by officers who did not know the content of the previous interviews. Therefore, examination of all the circumstances discloses no improper conduct by the DEA agents " 'such as to overbear [the appellants'] will to resist and bring about confessions not freely self–determined....' " *United States v. Reed,* 572 F.2d 412, 426 (2d Cir. 1978), cert. denied, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978) (quoting, *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir.), cert. denied, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967)); see *Brown v. Illinois,* 422 U.S. 590, 600–04, 95 S.Ct. 2254, 2260–62, 45 L.Ed.2d 416 (1975).

■ (C) Finally, the appellants urge that the search warrant issued for appellant Vasquez's apartment[4] was not supported by probable cause because certain information contained in the affidavit was part of

---

previous knowledge that the suspects were linked to drug trafficking.

**3.** The mere fact that conduct is as consistent with innocence as with guilt does not preclude such conduct from providing the basis for a reasonable suspicion of criminal activity. *E. g., United States v. Buenaventura–Ariza, supra,* 615 F.2d at 37; *United States v. Price,* 599 F.2d 494, 502 (2d Cir. 1979).

**4.** Only appellant Vasquez has standing to challenge the issuance and execution of the search warrant for apartment 19D, 104–40 Queens Blvd., Forest Hills, New York. Appellant Ibarguan did not attempt to demonstrate that he owned or had a property interest in the premises or property subject to search. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Sanchez,* 635 F.2d 47, at 62 64 (2d Cir. 1980). The purpose of the search warrant was to discover evidence identifying Vasquez as "Corea," to whom the apartment was leased. In addition to other related information, the officer who searched the government car which transported the appellants to

the suppressed incriminating statements. Specifically, Paragraph 2 of the affidavit, which refers solely to the identity and residency of appellant Vasquez, was based on statements made before the appellants received their constitutional rights. We agree with Judge Weinstein, however, that this information "was of no significance" in the magistrate's decision to issue a warrant because of the existence of other sufficiently detailed and corroborated evidence that the appellants were involved in drug trafficking. The determinations made by a neutral magistrate and district judge that probable cause existed to issue a search warrant are accorded great deference and "any doubts should be resolved in favor of upholding the warrant." *United States v. Jackstadt*, 617 F.2d 12, 14 (2d Cir. 1980) (per curiam); *e. g., United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

The judgments of conviction are therefore affirmed.[5]

the police precinct discovered an automobile registration precinct discovered an automobile registration bearing the name "Gustavo Rodriquez," registered to 104–40 Queens Blvd., Forest Hills, New York. This bolstered the DEA's suspicion that "Vasquez" and "Corea" were pseudonyms for the same person.

5. The possibility of a sentencing defect under *Bifulco v. United States*, 447 U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) was not raised by the appellants in their brief or oral argument. Therefore, we need not address the issue but leave to appellants whatever remedy they may have pursuant to Fed.R.Crim.P. 35 or 28 U.S.C. § 2255. *E. g., United States v. Bohlman*, 625 F.2d 751 (6th Cir.) (1980).