### UNITED STATES of America

#### v.

#### Jose Natalio FERNANDEZ–DILONE, Aquilino Hernandez, a/k/a "Tony," and Santos E. Collado, Defendants.

#### No. 87 Cr. 105 (DNE).

United States District Court,
S.D. New York.

Aug. 21, 1987.

---

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y. (Peter B. Sobol, Annmarie Levins, Asst. U.S. Attys., of counsel), for U.S.

John James Dockrey, New York City, for defendant Jose Natalio Fernandez-Dilone.

Caesar D. Cirigliano, The Legal Aid Soc., Federal Defenders Services Unit, New York City (Kevin Nathaniel Fox, Helen Cody, of counsel), for defendant Aquilino Hernandez.

Bobbi C. Sternheim, New York City, for defendant Santos E. Collado.

## OPINION AND ORDER

EDELSTEIN, District Judge:

On March 23, 1987, defendant Jose Natalio Fernandez-Dilone ("Fernandez") pleaded guilty to one count of distribution of cocaine and possession of cocaine with intent to distribute, 21 U.S.C. section 841. Fernandez has moved[1] for an order holding that the October 27, 1986 amendment of the sentencing provisions of 21 U.S.C. section 841(b)(1)(B) is inapplicable to the sentence to be imposed against him. The request is denied.

## BACKGROUND

In the early afternoon of January 15, 1987, defendant Aquilino Hernandez ("Hernandez"), during the course of five telephone conversations with an undercover DEA agent, negotiated terms for the sale of one kilogram of cocaine. Hernandez ultimately agreed to meet the agent at the northwest corner of 69th Street and Amsterdam Avenue in New York City. At approximately 4:30 p.m. later that day, Hernandez arrived at the pre-arranged location, reconfirmed the sale with the agent, and left. Approximately ten minutes later, Hernandez and defendants Santos E. Collado ("Collado") and Fernandez arrived at

---

1. Defendant Fernandez has also moved pursuant to Fed.R.Crim.P. 41(e) for the return of of certain property seized from the apartment in which he was residing at the date of his arrest. This court defers ruling on this motion until after an evidentiary hearing has been conducted.

the intersection in a station wagon driven by Fernandez. When the defendants sought to consummate the sale, they were arrested. A loaded pistol and a package containing 1002.2 grams of 91 percent pure cocaine hydrochloride were later recovered from the station wagon.

On February 11, 1987, a three count indictment was filed against the defendants. The first count charged the three with conspiring to distribute cocaine and possessing cocaine with intent to distribute, 21 U.S.C. section 846. The second count charged the defendants with the substantive offense of possession of cocaine with intent to distribute, 21 U.S.C. section 812, 841(a)(1), and 841(b)(1)(B), as amended by Pub.L. No. 99–570, effective October 27, 1986, and 18 U.S.C. section 2. The third count of the indictment charged Fernandez with carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. section 924(c)(1), as amended by Pub.L. No. 99–308, 100 Stat. 449, effective November 15, 1986.

On March 17, 1987, Hernandez pleaded guilty to count one, conspiring to distribute cocaine and possess cocaine with intent to distribute.[2] One day later, Collado pleaded guilty to the identical count.[3] On March 23, 1987, Fernandez pleaded guilty to count two, the substantive offense of distribution of cocaine and possession of cocaine with intent to distribute.[4] The pleas of all three defendants were made pursuant to plea agreements with the government. *See supra* notes 2 & 3.

## DISCUSSION

Section 841(a)(1) of Title 21 of the United States Code proscribes the distribution of cocaine or the possession of cocaine with intent to distribute. Violation of this section subjects the offender to the penalties authorized in 21 U.S.C. section 841(b)(1)(B). On October 27, 1986, these penalties were toughened by the Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570, Title I, section 1001 ("1986 Act"). Previously, the maximum punishment available under section 841(b)(1)(B) for a defendant such as Fernandez was a term of imprisonment of fifteen years and a fine of 125,000 dollars. Under section 841(b)(1)(B), as amended, Fernandez is subject to a mandatory minimum term of imprisonment of five years, a maximum term of imprisonment of forty years, and a fine of 2,000,000 dollars. *See* 21 U.S.C.A. section 841(b)(1)(B) (West Supp. 1987).

Defendant Fernandez requests an order of the court holding that the amendment of section 841(b)(1)(B) providing for a mandatory minimum term of imprisonment of five years is inapplicable to him. *See supra* note 4. Defendant makes three claims: 1) the amendment was precluded by a prior act of Congress; 2) the amendment was not promulgated and thus is an ex post facto law; and 3) application of the amendment would be violative of the Constitutional prohibition on unusual punishments. Each of these claims shall be addressed in turn.

## I. Invalidity Due to Previous Act of Congress

■ Defendant argues that the 1986 amendment of 21 U.S.C. section 841 was precluded by prior act of Congress. Section 841 was previously amended by the Sentencing Reform Act of 1984 ("1984 Act"). That amendment included the repeal of section 841's provision for the imposition of terms of special parole. *See* Pub.L. No. 98–473, Title II, sections 224(a), 235, 98 Stat. 1837, 2030–31 (1984). The effect of this repeal, however, was not immediate. "In the same legislation (Public Law 98–473, Title II, c. II) it was provided that ... the repeal of Special Parole provi-

---

2. On April 28, 1987, Hernandez was sentenced to a term of imprisonment of five years. The remaining open count against Hernandez was dismissed on motion of the government.

3. On April 30, 1987, Collado was sentenced to a term of imprisonment of forty-two months. The remaining open count against Collado was dismissed on motion of the defendant with no opposition by the government.

4. Defendant Fernandez was fully allocuted on the penalties provided under Pub.L. No. 99–570 at the time of his guilty plea. This court views the instant motion as the functional equivalent of a defendant's presentencing memorandum.

sions ... would [not] become effective before November 1, 1987 (36 months after Public Law 98–473 was enacted)."[5] Defendant's Mem. at 3. The delay in the amendment's effective date also takes into account the extensive alterations in sentencing procedures envisioned by the 1984 Act. The 1984 Act provides that sentencing shall be made pursuant to detailed sentencing guidelines. In the event that the United States Sentencing Commission and the General Accounting Office fail to deliver these sentencing guidelines to Congress in a timely fashion, the 1984 Act provides for further adjournment of the effective date of the repeal of section 841's special parole provisions.

As the 1984 Act speaks of sweeping sentencing reforms, and directly affects the sentencing provisions of section 841, defendant argues that Congress precluded itself from further altering section 841 until after the full implementation of the 1984 Act. Defendant, however, has provided no citation to either the plain language or legislative history of the 1984 Act which demonstrates this was indeed the intent of Congress. Furthermore, even if this court was to accept defendant's proposition, there has been no showing of any reason why Congress could not have simply reconsidered its earlier decision.

In fact, in adopting the 1986 Act, Congress was apparently aware of the interplay of that Act and the 1984 Act. Among the professed goals of the Sentencing Reform Act was the promotion of certainty and uniformity in sentencing. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3220–22. By establishing a mandatory minimum sentence, the 1986 Act aids in the realization of that goal.[6]

The 1986 Act, however, comports with more than just the spirit of the 1984 Act.

The effective date of the 1986 Act is, in part, directly linked with the Sentencing Reform Act. The institution of supervised release, by the terms of the 1986 Act, will not occur until 18 U.S.C. section 3583 becomes effective. *See* Pub.L. No. 99–570, Title I, section 1004(b). 18 U.S.C. section 3583, which provides for supervised release after imprisonment, is part of the Sentencing Reform Act of 1984.

█ Thus, it is clear that Congress was aware of the interplay between the 1984 and 1986 Acts. Congress, however, chose not to limit the effectiveness of the amendment of 21 U.S.C. section 841 through any reference to the 1984 Act. This court rejects the proposition that Congress in 1984 intended to preclude any further amendment of section 841 until after full implementation of the Sentencing Reform Act. Nevertheless, if that had indeed been the intent of Congress, the 1986 Act constitutes a rejection of that earlier decision. Accordingly, defendant's claim that the 1986 amendment of 21 U.S.C. section 841 is invalid per prior act of Congress is rejected.

## II. Invalid as Not Promulgated and Thus Ex Post Facto

Defendant claims that the Anti-Drug Abuse Act of 1986 had not yet been promulgated prior to the date of his arrest. Therefore, defendant concludes that the Act is violative of the Constitutional prohibition on ex post facto laws. *See* U.S. Const. art. I, sec. 9, cl. 3. Defendant's claim that the 1986 Act was not promulgated is falacious. The 1986 Act, Public Law No. 99–570, was passed by Congress on October 17, 1986, as publicly reflected in the Congressional Record, 132 Cong.Rec. H11220 (daily ed. October 17, 1986). As the defendant concedes, the complete text of the law was promptly printed in the

---

**5.** The effective date cited by defendant was in fact set by Pub.L. No. 99–217, section 4, 100 Stat. 1728, 1728 (1985).

**6.** The value of certainty in sentencing has been forcefully stated by United States Senator Byrd: [a drug dealer] must know that there will be no escape hatch through which he can avoid a

term of years in the penitentiary. He must know in advance exactly how lengthy that prison term is going to be ... He must serve jail time ... It will not be a matter for judges' discretion for these types of crimes. 132 Cong.Rec. S14301 (daily ed. Sept. 30, 1986).

Congressional Record. President Reagan, in turn, publicly signed the Act into law on October 27, 1986; and the Act was reprinted in the United States Code, Congressional and Administrative News in December 1986. *See* 1986 U.S.Code Cong. & Admin. News Public Law No. 99–570, 100 Stat. 3207. Clearly, the Act had been promulgated before January 15, 1987, the date on which Fernandez violated 21 U.S.C. section 841.

An ex post facto law is one which either a) imposes punishment for an act not punishable at the time it was committed, or b) imposes a greater punishment than that which was authorized at the time the crime was committed. *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 971–72 (2d Cir.1985). This is not the case here. Accordingly, this court rejects defendant's claim that the 1986 amendment of 21 U.S.C. section 841 constitutes an ex post facto law.

Defendant concedes that ignorance of the law is no defense. Nevertheless, Fernandez, in discussing ex post facto laws, argues that given the recent vintage of section 841's mandatory minimum term of imprisonment, it would be unfair to impose that mandatory penalty in the instant case. This court disagrees. At the time of the offense, the defendant was well aware that the trafficking in narcotics constituted a crime. *See* Tr. of March 17, 1987 at 12 (guilty plea allocution). Yet, Fernandez chose to participate in the sale of a substantial quantity of cocaine. Narcotics trafficking is an extremely serious crime and one that often involves violence. *See United States v. Martinez-Gonzalez*, 686 F.2d 93, 100–01 (2d Cir.1982); *United States v. Vasquez*, 634 F.2d 41, 43 (2d Cir.1980); *United States v. Remy*, 658 F.Supp. 661, 667 (S.D.N.Y.1987). Not only is the imposition of the mandatory minimum term of imprisonment required by statute, it is fair under the circumstances of the instant case.

## III. Unusual Under the Eighth Amendment

Defendant does not contend that the mandatory minimum sentence provided by section 841, as amended, is on its face cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Rather, he argues that:

> under the new law the government's *continued* practice of offering different defendants bargained pleas to different counts, one of which carries a minimum mandatory, brings about or forces punishments quite different from what they used to be. This difference we have equated with the constitutional prohibition of "unusual punishment."

Defendant's Mem. at 6 (emphasis in original). Fernandez further argues that by offering different pleas to different defendants, the prosecutor effectively robs the district court of its discretion in sentencing. This, he contends, also constitutes unusual punishment.

 There is no constitutional right to a plea bargain, and the forging of a plea agreement is left to the discretion of the prosecutor. *United States v. Moody*, 778 F.2d 1380, 1385–86 (9th Cir.1985), *modified*, 791 F.2d 707 (9th Cir.1986); *see Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *United States v. Rombom*, 421 F.Supp. 1295, 1297 (S.D.N.Y.1976). The nature of this prosecutorial discretion is extremely broad. *United States v. Bell*, 506 F.2d 207, 222 (D.C.Cir.1974) (upholding differing plea agreements in multiple defendant case). The exercise of selectivity in the enforcement of the law is not in itself impermissible. *Moody*, 778 F.2d at 1386. Indeed, a prosecutor is expected to tailor plea agreements to the circumstances presented by each defendant in a particular case. *Bell*, 506 F.2d at 221 & n. 106. The discretion of the prosecutor will be displaced, however, when the plea agreement is based on an unjustified standard.[7] *Id.* at 222; *see Bordenkircher v. Hayes*, 434 U.S. 357,

---

7. Such improper standards include, but are not limited to, race, religion and standards adopted due to prosecutorial corruption or vexatiousness. *See Bell*, 506 F.2d at 222.

364–65, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *Miller v. Superintendant*, 480 F.Supp. 858, 861 (S.D.N.Y.1979). In the instant case, there has been no claim or showing that the plea arrangements were influenced by any improper standard. Thus, the plea arrangements were made in the proper exercise of prosecutorial discretion, and do not amount to a violation of the defendant's constitutional rights.

■ Defendant has also argued that the mandatory sentencing provisions of amended 21 U.S.C. section 841 impermissibly deprive the district court of some its discretion in sentencing. The issue of limiting the discretion of courts in sentencing is currently a topic of keen legal interest and spirited debate. When fully enacted, the Sentencing Reform Act will require federal courts to sentence defendants pursuant to detailed guidelines promulgated by the United States Sentencing Commission ("Commission"). This limitation of discretion in sentencing has been met with varying degrees of enthusiasm.[8] Among the most significant objections to the sentencing guidelines is the claim of a possible constitutional flaw in the Commission. This claim is based on a perceived violation of the doctrine of separation of powers. *See Note, The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale 1363 (1987) ("Note").

The Commission, an independent agency within the judicial branch of government, will have a continuing existence even after the promulgation of the initial set of sentencing guidelines. Under 28 U.S.C.A. sections 994(*o*) and 994(p) (West Supp.1987),

the Commission is mandated to review the guidelines and submit amendments to Congress. These amendments would then take effect 180 days after submission unless modified or rejected by act of Congress.

The claimed violation of separation of powers finds one of its bases in the constitutional limitation on delegation of legislative power. Article I, section I, of the United States Constitution provides "[a]ll legislative [p]owers ... shall be vested in a Congress of the United States." It has been argued that the Commission has been improperly vested with legislative powers. *See* Note at 1369–73, 1374–76. The Commission it is contended, "intrudes into an area where decisions must be made through the deliberative processes of Congress. Every one of its guidelines, all of which go into effect unless Congress passes and the President signs an act to the contrary, will reflect the type of substantive moral judgment that has traditionally been reserved for Congress." *Id.* at 1374 (footnote omitted).

■ Statutes, however, have only rarely been struck down on nondelegation grounds. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Gewirtz, *The Courts, Congress, and Executive Policy Making: Notes on Three Doctrines*, 40 Law & Contemp. Probs., Summer 1976 at 50–51 ("Gewirtz"). In general, delegation of legislative power will be permitted if Congress provides the principles and standards by which the delegated power is to be exercised. *See e.g., Yakus v. United States*, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944) (delegation proper with "standards" demonstrating "will of Con-

---

**8.** For a representative, but not exclusive, listing of the reactions to the proposed guidelines, see, Remarks of Hon. G. Thomas Eisele, Chief Judge, Eastern District of Arkansas, before ABA Annual Meeting, San Francisco, Ca., August 11, 1987 (noting practical and potential constitutional flaws in the Sentencing Commission and urging total rejection of the guidelines); Report of the Executive Committee of the Judicial Conference of the United States, July 16, 1987 (calling for a delay in implementation of the guidelines to 1) allow training of judges in using the guidelines, 2) allow field testing of the guide-

lines, 3) allow Courts of Appeals time to prepare for an expected increase in caseload, 4) allow creation of procedures to expedite preparation of transcripts for appeal in non-CJA cases, 5) prepare for the expected increase in federal prison population; Report of Samuel J. Buffone, Chairman ABA Criminal Justice Section Committee on the U.S. Sentencing Commission (supporting concept of a sentencing guidelines system, but urging delay in implementation to permit further testing, evaluation, education, and refinement of the guidelines).

gress"); *United States v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 282 U.S. 311, 324, 51 S.Ct. 159, 162, 75 L.Ed. 359 (1931) (delegation proper with "prescribed standard"); Gerwirtz at 50–51 (Commentator noting delegations upheld when Congress offered minimal guidance as to basic policy). These cases indicate that the Commission would likely survive a constitutional challenge. *But see* Gewirtz (calling for revitalization of nondelegation doctrine); Note at 1369 n. 53 (calling for strict enforcement of nondelegation doctrine for criminal statutes). The Sentencing Reform Act expressly establishes principles by which the Commission is to fashion its guidelines. *See* 28 U.S.C.A. section 994 (West Supp.1987). Furthermore, each provision of the guidelines is subject to Congressional review before becoming effective. *See id.* at section 994(p). Thus, the creation of the Commission apparently does not represent an arbitrary and unguided delegation of power.

The resolution of the question of the constitutionality of the Commission, however, must await another day. In the case at bar, the limitation on the court's discretion in sentencing is not the result of any delegation of legislative power. The 1986 amendment of 21 U.S.C. section 841 is not a product of the Commission. The imposition of a mandatory minimum term of imprisonment is expressly required by a statute passed by Congress itself. Thus, the mandatory minimum term is not susceptible to nondelegation doctrine challenges.

■ Defendant is quite correct in noting that the 1986 amendment of 21 U.S.C. section 841 deprives a court of some of its discretion in sentencing. This, however, was precisely the intent of Congress. *See* 132 Cong.Rec. S14301 (daily ed. Sept. 30, 1986). A federal court has no inherent power to impose a sentence which has not been authorized by a federal statute applicable to the offense for which the defendant has been convicted. *United States v. Elkin*, 731 F.2d 1005, 1011 (2d Cir.), *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Best*, 573 F.2d 1095, 1101 (9th Cir.1978). Al-

though courts exercise considerable discretion in sentencing, sentences are of course circumscribed by the demands of statute. *Elkin*, 731 F.2d at 1010. The instant case is an example of such a valid circumscription. Thus, this court finds defendant's protests to be unavailing.

CONCLUSION

Defendant's argument that the October 27, 1986 amendment of the sentencing provisions of 21 U.S.C. section 841(b)(1)(B) is inapplicable to to him is hereby rejected.

SO ORDERED.