UNITED STATES of America

v.

**Sheldon BUSCHEL, a/k/a Robert G. Solomon and Mark T. Hein.**

No. 84–CR–26.

United States District Court, N.D. New York.

Aug. 24, 1984.

Zwerling & Mark, P.C., Alexandria, Va., for defendant Hein; John Flowers Mark, Alexandria, Va., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

On February 29, 1984, a two-count indictment was filed charging defendant Sheldon Buschel with unlawful possession with intent to distribute approximately 1,250 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) (count I) and charging defendants Sheldon Buschel and Mark Hein with a conspiracy to possess with intent to distribute that marijuana in violation of 21 U.S.C. § 846 (count II). Presently before the Court is defendant Hein's motion to suppress all evidence seized from him following his allegedly unlawful arrest. Fed. R.Crim.P. 41(f). The challenged arrest was made without a warrant and assertedly without probable cause. A hearing on the motion was conducted on May 30 and 31, 1984.[1] Final submissions of counsel were received in chambers on August 9, 1984.

### II

On February 15, 1984, approximately 1,250 pounds of marijuana were seized from a home owned by Leonard Durell. At the time, the home was rented and occupied by defendant Sheldon Buschel.[2] Allegedly, when Buschel discovered the marijuana was missing, he called Durell and accused him of its theft. Fearing for his safety, Durell subsequently requested protection from the New York State Police. On Feb-

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Albany, N.Y., for the U.S.; John J. McCann, Asst. U.S. Atty., Syracuse, N.Y., Robyn C. Mitchell, Trial Atty., U.S. Dept. of Justice, Washington, D.C., of counsel.

Arkin & Arisohn, P.C., New York City, for defendant Buschel; Marc Bogatin, New York City, of counsel.

1. The hearing was combined with a hearing held in connection with co-defendant Sheldon Buschel's motion to suppress the fruits of an allegedly illegal search. In a decision filed on August 13, 1984, the Court granted Buschel's motion to suppress. *United States v. Buschel,* 594 F.Supp. 937 (N.D.N.Y.1984). At the joint hearing, the following witnesses testified with respect to the instant motion: Gregory J. Harlin, Narcotics Unit Investigator with the New York State Police; Daniel J. Reidy, Senior Narcotics Investigator with the New York State Police; and defendant Mark T. Hein. By stipulation of the parties, the testimony of Leonard Durell, received relative to the Buschel motion, was incorporated into the record here.

2. The details of the search and seizure are set forth in this Court's earlier decision granting defendant Buschel's motion to suppress, *United States v. Buschel,* 594 F.Supp. 937 (N.D.N.Y.1984).

ruary 19, 1984, New York State Police Investigator Gregory Harlin and others were assigned to protect Durell. According to Harlin, Durell appeared nervous and frightened and told Harlin of conversations he had had with Buschel in which Buschel had stated that he was not the only one involved in the case and that he would not "take the fall" alone.

On February 20, 1984, Investigator Harlin returned a telephone call he had received from Durell. Durell told Harlin that he (Durell) was to meet Buschel at the intersection of Front and Church Streets in New Paltz, New York. Harlin testified that Durell stated that "they" (Buschel and another) were going to meet him (Durell) there. Harlin then arranged to meet with Durell in New Paltz prior to Durell's meeting with Buschel, and notified New York State Police Investigator Daniel Reidy of the impending meeting. Harlin met Durell at a parking area on lower Main Street in New Paltz at approximately 7:00 P.M. on the 20th. He advised Durell that he would follow him to the Front and Church Street location where the meeting with Buschel was to occur.

### A. Investigator Harlin's testimony

Harlin testified that after his meeting with Durell he turned his vehicle off Main Street and proceeded to the intersection of Front and Church Streets. Before arriving there, he observed defendant Hein standing by a restaurant. He then observed Hein walk to the corner and then towards the Durell car in which a passenger, who later proved to be Buschel, was now seated. After Harlin exited his car on Front Street, Hein looked at him, turned around, and then walked back toward the restaurant. Harlin approached the Durell car and observed Buschel sitting in the front passenger seat. He also observed Hein walking up Front Street, looking back and talking into his coat. Harlin opened the door of the Durell car and arrested Buschel. By this time, Investigator Reidy had arrived

and a search of Buschel uncovered a small tape recorder with a microphone attached to his sleeve and a quantity of marijuana. Harlin and Reidy then proceeded in their car up Front Street in search of another person whom they believed to be involved. When they came upon Hein, Harlin exited the car and placed Hein under arrest. Reidy assisted in the arrest and subsequent search which revealed a walkie-talkie, a beeper and a small notebook. No drugs were found on Hein's person.

### B. Investigator Reidy's testimony

Reidy testified that after receiving a call from Harlin he drove to New Paltz. Along the way, he passed Durell's house looking for Durell's yellow Pinto or Escort type car. While in New Paltz, Reidy spotted the car parked on a corner and saw "two gentlemen," whom he later identified as Buschel and Hein. According to Reidy, the two appeared to be talking on the street corner, although he could see no lip movement. Reidy saw Hein walk away and observed Buschel enter Durell's car. Within a minute, he observed Harlin place Buschel under arrest. He then observed Hein walking up the street, apparently talking to no one and looking back over his shoulder. Reidy then assisted in the arrest and search of Buschel. Harlin then told Reidy he thought there were "two of them." Reidy agreed and said he had seen one. Reidy and Harlin then drove up Front Street and turned onto Main Street where they saw Hein in a recessed doorway. They drove around the block once and when they returned saw that Hein had moved and was now heading in the opposite direction on Main Street. The officers approached Hein and immediately placed him under arrest.

### III

In addition to questioning the complete truthfulness of the above account as set forth by Investigators Harlin and Reidy,[3] defendant points to a number of factors

---

3. Defendant urges the Court to accord little weight to the testimony of officers Reidy and Harlin since neither made any contemporane- ous notes or records of the surveillance and arrest and therefore testified only from memory some three months later.

assertedly supportive of his position that his arrest was without probable cause. First, defendant contends that there were no investigative inquiries made nor any opportunity given him to explain his presence, demeanor or any other suspicions the officers may have had prior to his arrest. Moreover, defendant suggests that there is no evidence that these officers feared for their own safety prior to his arrest. Finally, defendant notes that prior to the evening of his arrest he was not known to any law enforcement officers, he had never been seen by any law enforcement officers, and no officer had any information from any source that he was in any way associated with defendant Buschel.[4]

Regarding the hearing testimony, defendant strenuously urges that no evidence has been adduced which would indicate that the officers had probable cause to effect his arrest. First, defendant points to the testimony of Investigator Harlin to the effect that prior to his arrest of Buschel, he had never seen Hein and Buschel together and had no information that Hein was in any way involved in the drug conspiracy. Second, defendant indicates what are alleged to be substantial contradictions and inconsistencies in the testimony of Investigator Reidy.

The Government's position with respect to probable cause in this case is simple. Indeed, the meager effort made by the Government to support its theory of the

validity of the arrest bespeaks an overly sanguine projection of the disposition of the instant motion. In short, the Government is content to rely simply upon the experience of the arresting officers, their suspicions that a confederate of Buschel would be in the area, and the somewhat suspicious behavior of Hein in the Town of New Paltz on the evening of the arrest.

After careful review of the hearing testimony and the arguments of counsel, the Court is persuaded that there was an insufficient basis for the arresting officers' determination of probable cause and the fruits of the arrest must therefore be suppressed.

## IV

 Both the starting and ending point for purposes of the present motion is found in the well settled proposition that warrantless arrests are unlawful unless made upon probable cause. *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979); *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963). Probable cause, of course, "must be determined with reference to the facts of each case ...." *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983). In general, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a

---

**4.** Defendant argues that the "groundless 'assumption' or 'hunch' by Investigator Harlin that someone was involved with Buschel and that this unknown individual would be in the immediate area of the meeting between Buschel and Durell is entitled to little consideration." Post-Hearing Memorandum on Behalf of Defendant Mark T. Hein at 4 n. 1. Defendant is certainly correct in noting that Harlin's testimony was to the effect that his assumption was based on his experience that drug dealers generally have associates in the area of a drug distribution to protect both themselves and their product. Defendant is also correct in pointing out that Officers Harlin and Reidy were not anticipating any drug distribution on the evening in question but rather were there simply to afford protection to Durell at what was feared to be a hostile meeting between a suspected drug dealer and the man he apparently believed had stolen his

drugs. Of course, as events later turned out, the officers also hoped to arrest that drug dealer. There was no indication, however, that the presence of Buschel was to occur in the context of a drug transaction fitting the pattern described by the officers, that is, one where their experience would suggest that confederates would be in the area. Nonetheless, defendant has ignored Investigator Harlin's testimony that when Durell told him of the anticipated meeting in New Paltz, he specifically referred to the fact that *"they* were going to meet [him] at the intersection of Front and Church." Transcript at 9. The officers therefore had at least some basis upon which to reasonably believe that another suspect would be in the area. As the discussion below makes evident, however, that suspicion was insufficient to support a determination of probable cause.

person of reasonable caution in the belief that (1) an offense has been or is being comitted (2) by the person to be arrested." *Id.; see also United States v. Torres*, 740 F.2d 122, 126 (2d Cir.1984). "The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction, … but it must constitute more than rumor, suspicion, or even a 'strong reason to suspect.'" *United States v. Fisher*, 702 F.2d at 375 (quoting *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959)).

 The Government has posited four factors, evaluation of which, in the context of the present case, is claimed to support a finding of probable cause. These factors include: (1) the experience and training of the police officers, *see United States v. Price*, 599 F.2d 494, 501 (2d Cir.1979); (2) elusive meanderings while appearing to be waiting for someone, especially where the experienced officers have observed this pattern of behavior before, *see United States v. Vasquez*, 634 F.2d 41, 43 (2d Cir.1980); (3) the appearance of checking for surveillance, *see United States v. Fisher*, 702 F.2d 373, 378 (2d Cir.1983); and (4) movements that are designed to avoid encounter with a police officer, *see id.* While all those factors have some relevance to the subject arrest, it is important to note that the cases cited by the Government employing these factors all involved only investigative stops, not warrantless arrests. It hardly need be stated that the standards governing the propriety of each are significantly different. *See, e.g., United States v. Vasquez*, 638 F.2d 507, 520 (2d Cir.1980), *cert. denied*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). While the totality of factors urged by the Government may have established a legitimate basis for an investigatory stop, that is, a reasonably articulable suspicion that Hein was or was about to be engaged in criminal activity, *see United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *United States v. Nargi*, 732 F.2d 1102, 1105 (2d Cir.1984), it is clear that those same factors do not support a finding of probable cause to arrest.[5]

The weakness of the Government's position is exemplified in its own statement that "there was sufficient probable cause to believe that [Hein] was performing a counter-surveillance of the Buschel and Durell meeting and was therefore a member of the conspiracy to possess, with intent to distribute, the 1250 pounds of marihuana seized from the Durell house." Government's Post-Hearing Brief in Opposition to Defendant Hein's Motion to Suppress at 9.

---

**5.** There can be no question here that the officers' actions far exceeded the bounds of a simple investigatory stop and rose to the level of an arrest. Although there is no "litmus-paper test … for determining when a seizure exceeds the bounds of an investigative stop," *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983), in general, "the intrusion must be no greater.than the circumstances require." *United States v. Vasquez*, 638 F.2d 507, 520 (2d Cir. 1980); *cert. denied*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981); *United States v. Nargi*, 732 F.2d 1102, 1106 (2d Cir.1984). "In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest." *Florida v. Royer*, 103 S.Ct. at 1325. While the "scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case …, an investigative detention must be temporary and last no longer than is neces-

sary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* The Government has failed to meet its burden of demonstrating that the seizure here was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *See id.* First, the record makes clear that officers Harlin and Reidy never intended to simply question Hein, but rather to immediately arrest him. As the two first approached defendant, Reidy directed Harlin to "take him." Hein was ordered immediately to place his hands against a wall prior to any questions being asked of him. Hein was arrested and then searched. At no time were investigative inquiries made. Nor was Hein given an opportunity to explain his presence, or what appeared to the officers to be his suspicious demeanor. Moreover, prior to the arrest, the officers had no reason to believe they were to fear for their own or others' safety.

The Court simply is unable to fathom how probable cause to believe that a defendant was engaged in "counter-surveillance," even when coupled with the other factors presented here, may lead to the objective conclusion that a defendant has engaged in or is engaging in criminal conduct. The hearing testimony establishes that at the very most, Hein's behavior was somewhat suspicious. Probable cause, however, must consist of "more than rumor, suspicion, or even a 'strong reason to suspect.'" *United States v. Fisher*, 702 F.2d at 375 (quoting *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959)).

The Court is satisfied that these officers acted without probable cause in effecting Hein's arrest. First, although there is a substantial dispute as to whether Investigator Reidy actually saw Hein standing with Buschel immediately preceeding the arrest,[6] the Court concludes that even assuming the truth of Reidy's observations, the defendants' presence together was insufficient to establish probable cause. The facts here are remarkably similar to those held in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), not to support a finding of probable cause. The *Sibron* Court noted:

> The prosecution has quite properly abandoned the notion that there was probable cause to arrest Sibron for any crime at the time Patrolman Martin accosted him in the restaurant, took him outside and searched him. The officer was not acquainted with Sibron and had no information concerning him. He merely saw Sibron talking to a number of known narcotics addicts over a period of eight

hours. It must be emphasized that Patrolman Martin was completely ignorant regarding the content of these conversations, and that he saw nothing pass between Sibron and the addicts. So far as he knew, they might indeed "have been talking about the World Series." The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin.

392 U.S. at 62–63, 88 S.Ct. at 1902. Here too, the mere presence of Hein in the area of Buschel's arrest simply is an insufficient basis upon which to ground a determination of probable cause. Even assuming the officers knew that a confederate of Buschel's would be in the area, there was no information or facts from which they reasonably could infer that Hein was that person. As in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), "none of the circumstances preceding the officers' [arrest] of [defendant] justified a reasonable suspicion that he was involved in criminal conduct." *Id.* at 51–52, 88 S.Ct. at 1896–97.

The additional factors relied upon by the Government and claimed to bolster the officers' probable cause determination likewise are rejected. First, although the Government now characterizes defendant's "suspicious" behavior as having been in the nature of "counter-surveillance," *see United*

---

**6.** Investigator Reidy testified that when he arrived in New Paltz, he observed Buschel and Hein standing together on a street corner, appearing to be engaged in a conversation. Defendant Hein categorically denied ever having been with Buschel on the corner in question. Investigator Harlin never testified that he had seen the two defendants together. Durell testified that he never saw Buschel and Hein together that evening. All of the testimony, however, is not necessarily contradictory. Although it is not at all clear, it certainly is possible that Reidy alone was in a position where he was able to observe the alleged meeting. Of course, Hein

flatly denies the substance of Reidy's testimony. The inconsistencies and contradictions alleged by defendant to undercut Reidy's testimony simply are exaggerated. First, it is of no particular significance that Reidy's hearing testimony is somewhat at variance from his statement in support of the criminal complaint. Second, defendant's reliance on Reidy's statement that he was unable to physically view Hein at all is taken out of context. According to Reidy, it was not until after he observed the alleged meeting and after Buschel came down the street that Hein was out of his sight.

*States v. Vasquez,* 638 F.2d 507, 513 (2d Cir.1980), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981),[7] there was no testimony by the officers that this was in fact how they perceived defendant's actions. Indeed, their testimony indicated at most their observation of somewhat suspicious behavior on the part of Hein. While the "experience of a police officer is a factor to be considered in the determination of probable cause ..., the relevance of the suspect's conduct should be sufficiently articulable that its import can be understood by the average reasonably prudent person." *United States v. Fisher,* 702 F.2d 372, 378 (2d Cir.1983) (citations omitted). The mere fact that Hein observed the arrest of Buschel with apparent interest, or perhaps only curiosity, and then walked both toward and away from the scene, hardly can impel the conclusion that he was engaged in "counter-surveillance."[8] "From all that appears in the record, [Hein's] conduct was entirely ambiguous, and ambiguous conduct does not provide probable cause for arrest." *Id.* (citation omitted).

Similarly, there is no basis in the record upon which to conclude that Hein was attempting to flee the scene, or, in the Government's words, "moving so as to avoid an encounter with the police."[9] The testimony of both Reidy and Harlin was only to the effect that after apparently observing the arrest of Buschel, Hein simply turned around and walked the other way.[10] There is hardly any indication of "flight" to be found in such behavior, particularly since there is no evidence that Hein knew that Reidy and Harlin were police officers. In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court reiterated the general rule that when a police officer insufficiently or unclearly identifies his office or his mission, a suspect's flight "must be regarded as ambiguous conduct." 371 U.S. at 482, 83 S.Ct. at 414; *see also Miller v. United States,* 357 U.S. 301, 310–12, 78 S.Ct. 1190, 1196–97, 2 L.Ed.2d 1332 (1958). In holding that such conduct was insufficient to support a finding of probable cause, the Court placed considerable reliance on its well established refusal to accord probative value in criminal trials to evidence of an accused's alleged flight, 371 U.S. at 483 n. 10, 83 S.Ct. at 415 n. 10, and quoted from its decision in *Alberty v. United States,* 162 U.S. 499, 16 S.Ct. 864, 40 L.Ed. 1051 (1896):

> [I]t is not universally true that a man, who is conscious that he has done wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right, and proper;' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to ap-

---

**7.** It must be noted again that the counter-surveillance present in *Vasquez* was only deemed sufficient to justify an investigative stop and not a more intrusive warrantless arrest.

**8.** The weakness of the Government's contention to the contrary is reinforced by the fact, as testified to by Investigator Reidy, that from the time he saw Buschel and Hein together until the time when Buschel was arrested, only a matter of minutes had elapsed. The officers could hardly discern the presence of counter-surveillance in so short a period of time.

**9.** The present case is readily distinguishable from *United States v. Vasquez,* 638 F.2d 507 (2d Cir.1980), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981), relied upon by the Government. First, in finding that police officers had probable cause to arrest defendant there, the court noted·that one of the arresting officers recognized him as a suspected major narcotics dealer he had previously arrested for cocaine dealing. Certainly, that situation is vastly different from the present one. More importantly, with respect to flight, the court was able to find a reasonable basis for probable cause in the fact that only after the officer called out and ordered the defendant to stop did he then begin to walk "swiftly away from him." 638 F.2d at 530 n. 15. Here, there was no clear indication that these officers were approaching Hein. His walking away would therefore not necessarily suggest an attempt to avoid a police encounter.

**10.** Investigator Reidy also testified that while Hein was walking he was looking back over his shoulder.

pear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth; but the righteous are as bold as a lion.' 162 U.S. at 511, 16 S.Ct. at 868. Because Hein's avoidance of the officers provides no basis upon which an inference of guilt may be grounded, that fact could not supply the necessary probable cause for his arrest.

## V

■ On balance, the Court finds inescapable the conclusion that officers Reidy and Harlin acted without probable cause in effecting the warrantless arrest of defendant Hein. While it is a closer question whether there may have been sufficient articulable suspicion warranting an investigatory stop, it is clear that that is a course of action these officers elected not to pursue. Having opted to arrest rather than simply question Hein, their actions can only be justified upon a finding of probable cause. Because probable cause was lacking, the arrest itself was unlawful and the fruits derived therefrom must be suppressed.

It is so Ordered.