UNITED STATES of America, Appellee,

v.

Edward BERKERY and Michael T. Quinn, Defendants–Appellants.

Nos. 321, 322, Dockets 90–1255, 90–1258.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1990.

Decided Nov. 20, 1990.

---

George A. Yanthis, Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., of counsel), for appellee.

Ronald F. Kidd, Duane, Morris & Heckscher, Philadelphia, Pa. (Teresa N. Cavanagh, Joshua Sarner, Duane, Morris & Heckscher, of counsel), for defendant-appellant Edward Berkery.

Syrie R. Davis, Oteri, Weinberg & Lawson, Boston, Mass. (Joseph S. Oteri, Martin G. Weinberg, Oteri, Weinberg & Lawson,

of counsel), for defendant-appellant Michael T. Quinn.

Before KAUFMAN, MAHONEY and WALKER, Circuit Judges.

KAUFMAN, Circuit Judge:

A treaty between the United States and Britain, entered into in 1976, allows for the extradition of accused and convicted criminals apprehended in each other's jurisdiction. Its provisions, however, allow such transfer only for activities which constitute crimes in both countries. Thus, appellant Edward Berkery could not be extradited from England for his activities connected with the importation into the United States of phenyl–2–propanone ("P2P") because its possession is not illegal in England. P2P is a chemical useless except as a necessary ingredient to the production of methamphetamine, a member of the amphetamine family more commonly known as "ice." Since methamphetamine is a controlled substance in both countries, extradition was secured on charges of conspiracy to manufacture that drug.

Following a jury trial, Berkery was convicted, along with Michael Quinn, for conspiring to manufacture a controlled substance. We find, however, that evidence of a single incident of P2P importation was insufficient, absent any proof of a manufacturing scheme or a more continuous supply operation, to support the conviction. Accordingly, reversal is in order.

Quinn, however, was also convicted for aiding and abetting the distribution of P2P. Since he was arrested within the United States, prosecution was not foreclosed. We affirm this conviction, since the verdict was sustained by ample evidence and the court's "conscious avoidance" instruction to the jury was not prejudicial.

## BACKGROUND

In June 1987, Berkery mailed 20 gallons of P2P[1] from Cologne, West Germany to an international groundwater exhibition in Albany, New York. One hundred sixty eight bottles were shipped in four cardboard boxes and mailed to "EPS International" via Federal Express. United States Customs agents intercepted the shipment, destroyed most of the P2P and substituted water in its place.

According to registration workers Kathy Butcher and Lisa Ammerman–Lelux, on June 8, 1987, a man identifying himself as Ian McPherson from EPS International signed in at the convention. Both Butcher and Ammerman–Lelux later identified the EPS representative as Michael Quinn.

That same day, a Customs agent, posing as a Federal Express worker, delivered the boxes to the exhibition area where a man directed him to place them into a Ford Bronco registered to Quinn. The recipient, later identified as James Murphy, signed "Ian McPherson," the pseudonym previously used by Quinn, on the receipt slip.

Surveillance agents followed the Bronco to a Holiday Inn in Troy, New York where Murphy parked the car next to an Oldsmobile sedan. Murphy, Berkery and another man, Edward Ennis, transferred the boxes into the Oldsmobile, which Berkery and Ennis drove to a restaurant. There they met with a man and a woman who were travelling in a black Mercedes. Berkery joined the couple and proceeded to Newark, New Jersey.

Government agents followed the Mercedes, since they assumed the boxes formerly containing P2P were in the car. When they stopped and searched the vehicle in the vicinity of the Newark airport, however, they failed to discover the contraband and were unable to make any arrests. The boxes were never recovered.

Several days later, a warrant was issued for Berkery's arrest based on information obtained from prior West German surveillance. Berkery was eventually apprehended in London, England and extradited to the United States.

---

[1]. P2P and methamphetamine are controlled substances in the United States. *See* 21 U.S.C. § 802(6); 21 C.F.R. 1308.12(d)(2), (g)(1).

As we have stated, the aforementioned treaty between the United States and the United Kingdom permits extradition only for offenses punishable under the laws of both countries. *See* Extradition Treaty, Oct. 21, 1976, 28 U.S.T. 227, T.I.A.S. No. 8468. Accordingly, since P2P is not a controlled substance in England, Berkery could not be charged with its importation into the United States. These circumstances led to his indictment, along with Murphy, Ennis and Quinn, for conspiracy to manufacture methamphetamine, a crime in both jurisdictions. Quinn, who was arrested in the United States, was additionally charged with, *inter alia*, aiding and abetting the possession of P2P with intent to distribute.

Berkery, Quinn and Ennis were jointly tried before a jury. Murphy remained a fugitive. Expert testimony established that P2P is a necessary ingredient of methamphetamine and serves no purpose other than use in its manufacture. Its production, however, involves a complex process requiring chemicals, a laboratory and equipment. The government presented no evidence of these essentials at trial.

Berkery and Quinn were convicted of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982) and sentenced to four year terms of imprisonment. Quinn was additionally convicted of aiding and abetting the possession of P2P with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), for which he received an additional four year concurrent term. Ennis was acquitted on all counts.

Judge Cholakis denied appellants' post-trial motions to overturn the verdict for insufficiency of the evidence. Though he conceded that drawing an inference of conspiracy to manufacture methamphetamine from a single instance of P2P importation "presented a very close question," he found that the "surrounding circumstances ... in this conspiracy are such that the jury may fairly and logically have concluded [they were] guilty beyond a reasonable doubt of conspiracy to manufacture methamphetamine." Berkery and Quinn now appeal from their judgment of conviction.

## DISCUSSION

When reviewing challenges to the sufficiency of evidence, a federal appellate court views the evidence in a light most favorable to the government, construing all permissible inferences in its favor. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942); *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989). If *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original). Moreover, the elements of a conspiracy and a defendant's membership in it may be proved entirely by circumstantial evidence. *United States v. Torres*, 740 F.2d 122, 125 (2d Cir.1984), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 482 (1985). Despite these principles, we find the government failed to put forth sufficient evidence to support the verdict for conspiracy to manufacture methamphetamine.

To sustain appellants' conviction, the government has the burden of proving that Berkery and Quinn had knowledge of and specifically intended to promote a manufacturing operation.[2] *See United States v. Di Stefano*, 555 F.2d 1094, 1103 (2d Cir.1977); *United States v. Cangiano*, 491 F.2d 906, 909 (2d Cir.), *cert. denied*, 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149 (1974). Accordingly, the prosecution ar-

---

**2.** 21 U.S.C. § 841 provides:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 802(15) defines "manufacture" as follows:
   The term "manufacture" means the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly....

gues that control of the large quantity of P2P constitutes sufficient circumstantial evidence to support the conspiracy verdict. Because the only known use for P2P is the production of methamphetamine, it reasons that possession alone establishes proof beyond a reasonable doubt of an agreement to manufacture methamphetamine. The district court, in denying appellants' post-trial motion, found this inference permissible. We do not.

We agree with appellants that one instance of P2P possession is insufficient to sustain a conviction for conspiracy to produce methamphetamine. To prove Berkery and Quinn were members of a conspiracy, the government must demonstrate more than awareness that the P2P would eventually be converted into methamphetamine; it must establish that there existed a plan to promote its manufacture. *See United States v. Peoni*, 100 F.2d 401, 403 (2d Cir. 1938).

Our determination turns on the question of how much the jury could permissibly infer from mere possession of P2P. In resolving this issue, the nature of the enterprise assists in discerning the conspirators' goals. *See United States v. Agueci*, 310 F.2d 817, 827 (2d Cir.1962), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963). For instance, the cases instruct that one who possesses a large quantity of narcotics is presumed to intend its distribution. This deduction logically follows from control over more drugs than one individual could possibly consume. *See United States v. Manbeck*, 744 F.2d 360, 389 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). However, the necessary inference that Berkery and Quinn specifically intended to *manufacture* methamphetamine, is not reasonably certain. Possession of a large quantity of P2P leads just as naturally to the conclusion that appellants merely intended to distribute it to others rather than acting in concert to manufacture. Unfortunately, the evidence does not definitively support either theory.

In analogous circumstances, Learned Hand set out the minimum requirements for drawing the requisite inference. In *Peoni*, 100 F.2d at 403, the defendant sold counterfeit bills to Regno; and Regno sold the same bills to Dorsey. The Court rejected the government's contention that since Peoni simply put the money into circulation, and knew Regno would likely sell them to a third party, he could be convicted of a conspiracy whereby Dorsey would possess counterfeit bills. Hand concluded:

> Peoni knew that somebody besides Regno might get [the counterfeit money], but a conspiracy also imports a concert of purpose, and ... Peoni had no concern with the bills after Regno paid for them.

*Id.* In *Agueci*, we clarified the reasons why the government fell short of proving a conspiracy: "Had the prosecution in Peoni been able to establish more than one sale ... the inference that Peoni knew that sales beyond his own would be made, and that he thus shared a common purpose with Dorsey as Regno's vendee, might well have been strong enough to warrant submission to the jury." 310 F.2d at 827.

Absent such proof of a continuous operation, the prosecution's failure to provide any evidence of a broader network of operators or equipment is critical to our resolution. Methamphetamine manufacturing prosecutions generally demonstrate knowledge that the necessary laboratory operations are available. *See, e.g., United States v. Lendmann*, 757 F.2d 916, 917 (7th Cir.1985). And, unlike the instant situation, the cases relied upon by the prosecution to support its position that a single act is sufficient to support a conspiracy conviction, contain some evidence of the ultimate goal of the conspiracy. *See, e.g., United States v. Torres*, 503 F.2d 1120, 1124 (2d Cir.1974).

Accordingly, we are of the view that Judge Cholakis was incorrect in concluding that "[t]he surrounding circumstances of [appellants'] activities in this conspiracy are such that the jury may fairly and logically have concluded [Berkery and Quinn were] guilty beyond a reasonable doubt." A single instance of P2P importation, without additional evidence of either connection with an actual manufacturing operation, or

a pattern of importing activity, cannot support an inference that appellants Berkery and Quinn were parties to an otherwise unidentified conspiracy to manufacture methamphetamine.

■ Notwithstanding our extended discussion of the government's failure to prove a crime involving methamphetamine, there remains for consideration Quinn's appeal of his conviction for aiding and abetting the fugitive James Murphy in possessing P2P with intent to distribute. As previously stated, the extradition treaty with England prohibited a similar prosecution against Berkery.

Quinn claims that both insufficient evidence and an improper jury instruction require reversal because the prosecution failed to establish that he knew his activities (or Murphy's) were drug-related. The circumstantial evidence, however, viewed in the light most favorable to the government, *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469–70, was sufficient since it amply established Quinn's association with Murphy and the P2P. First, Butcher and Ammerman–Lelux, the registration workers at the convention, identified Quinn as the man who gave the false name "Ian McPherson," and then, when the Customs agent delivered the P2P to Murphy, he used the same pseudonym. Finally, Murphy directed the agent to load the boxes into the Ford Bronco registered to Quinn. Based on this chain of events, the jury could rationally conclude that Quinn was associated with the P2P scheme, and that he intentionally provided Murphy with his truck for use in transporting and distributing the large quantity of drugs.

■ The jury charge on "conscious avoidance" does not alter our conclusion. Judge Cholakis instructed that "[t]he element of knowledge of a given fact may be satisfied by proof beyond a reasonable doubt that a defendant acted with a conscious avoidance of what the truth was, unless he actually believed the contrary to be true." Quinn alleges that this "conscious avoidance" instruction compounded the alleged evidentiary problem by allowing the government to escape its burden of proving his intent to aid and abet Murphy. He claims there was no factual basis for this charge because his defense was predicated upon mistake of identity, not on lack of guilty knowledge. We do not agree.

The government had the burden of proving the requisite intent elements of the aiding and abetting offense. Quinn's use of the pseudonym, his claim to be with EPS International and the use of his truck to distribute the P2P, provided an evidentiary basis for Judge Cholakis' charge that these facts might be used to infer the requisite *mens rea*. Moreover, Quinn did not object to this instruction. Since the charge was proper and Quinn was not prejudiced by it, we conclude affirmance is in order.

Accordingly, Berkery and Quinn's convictions for conspiracy to manufacture methamphetamine are reversed on the grounds we have set forth. Quinn's conviction for aiding and abetting Murphy in unlawfully possessing P2P with intent to distribute is affirmed.